JONES LUMBER CO. 'et al. v. GUARANTY STATE BANK & TRUST CO. et al.

(Court of Civil Appeals of Texas. Dallas. May 3, 1913. Additional Findings of Fact May 31, 1913.)

1. MECHANICS' LIENS (§ 13*)—PROPERTY SUBJECT—PUBLIC PROPERTY.

Materialmen and laborers can fix no lien upon public works for money due them for materials furnished or labor performed in the construction of such works.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 14, 15; Dec. Dig. § 13.*]

2. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS ON FUND FOR LABOR AND MATERIALS.

Dallas City Charter, art. 14, § 21, requiring subcontractors, materialmen, mechanics, and laborers upon any public works of the city to notify the city of all claims on account of such work against the city, and requiring the city to retain from any funds due the contractors an amount sufficient to satisfy all claims, and providing that such notice may be given at any time after such indebtedness becomes due and before final settlement, merely prescribes a mode by which the city can pay materialmen and laborers such amounts as may be due them out of funds held by it and due the contractor, and does not give them any superior claim or right to the fund, except as against the contractor, and hence did not give laborers and materialmen a right to such a fund superior to that of a party which took an assignment from the contractor before notice was given to the city by the laborers and materialmen.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

3. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS ON FUND FOR MATERIAL AND LABOR.

Where parties advancing money to a contractor to carry out his contract for the construction of a public improvement took assignments of the funds due the contractor from the city long prior to the giving of the notice of their claims to the city by materialmen and laborers as required by the city charter, which also required the city, upon receipt of such notice, to retain an amount from the funds due the contractor sufficient to satisfy all claims, the assignees' legal rights under the assignments were superior to the equities of the materialmen and laborers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Guaranty State Bank & Trust Company and others against the Jones Lumber Company and others. From a judgment, the defendant named and other defendants appeal. Affirmed.

J. J. Eckford, A. B. Flanary, R. G. Watson, Spence, Knight, Baker & Harris, Alex. F. Weisburg, E. M. Baker, Smith, Robertson & Robertson, Etheridge & McCormick, Henri L. Bromberg, and Joe Utay, all of Dallas, for appellants. Burgess, Burgess & Chrestman, Leake & Henry, and R. V. & W. S. Davidson, all of Dallas, and Kleberg & Neethe, of Galveston, for appellees.

RAINEY, C. J. The following statement of the case is taken from appellees' brief:

"On September 5, 1911, the appellee, Guaranty State Bank & Trust Company, brought this suit against John C. Underwood and M. Murphy and the city of Dallas. The suit was on a note of said Underwood for $4,500, and said note was indorsed by the defendant Murphy; that said note was in part a renewal of an original note for $2,000 of the said Underwood made in January, 1911; that said Underwood on the 9th day of January, 1911, as additional security for said original note, made an assignment to secure said note and any future indebtedness of the said Underwood to the said guaranty company, all the balance due him on a certain contract between himself and the city of Dallas for paving a part of Commerce street, amounting to $1,150.87, and also assigned to said bank all the balance due him by said city under his contract for the laying of a pipe line, amounting to $2,238.56, and also so assigned all such sums as the said city might there-

after hold in reserve under said contracts. The defendant Underwood answered in his own person, admitting the execution of the said notes and assignments to the said Guaranty Bank & Trust Company, and also the allegations of M. Murphy and the Fidelity & Deposit Company of Maryland. The city of Dallas filed its answer January 8, 1912. In this answer the city set forth fully the contracts that had been made with it by the said Underwood, stating: That on July 8, 1910, it made a contract with him for the paving of a part of Commerce street. That it had paid the said Underwood under said contract $8,-815.16. That Underwood had failed to perform his contract in full, requiring the city to pay out for him the sum of $577.80, and that the city had a balance in its hands belonging to Underwood under said Commerce street contract of $8,212.58, and stating as follows in respect to said balance: ' * * * Which said sum is now being held by the city of Dallas, subject to the assignments and claims hereinafter referred to.' That on September 26, 1910, the city made a contract with the said Underwood to construct a pipe line. That under said contract the city had paid said Underwood $17,230.64. That said Underwood did not fully perform the said contract, and that it required $559.64 to complete same, which amount was due to and the contract completed by the said Fidelity & Deposit Company and M. Murphy, appellants herein, at the said cost of $559.64. That there was a balance in the hands of the city on said contract of $5,147.90, exclusive of the $559.64 due the sureties, Fidelity & Deposit Company and M. Murphy, for completing the contract. The city set forth that claims and assignments had been filed with it, which claims and assignments are those of appellants and appellees in this cause. The city also stated that the assignments and claims were far in excess of the money held by it to the credit of Underwood, and prayed that upon a hearing of the cause it should have a judgment protecting it in the payment of said moneys, and that such said assignees and claimants be required to adjudicate their respective rights, and that the city's rights be fully adjudicated and protected. It also pleaded certain provisions of its contract with Underwood and provisions of its charter. The city made parties all the assignees and claimants to the funds.

"On January 25, 1912, M. Murphy and the Fidelity & Deposit Company of Maryland filed their first amended petition of intervention wherein they set up that they had given bond for John C. Underwood to the city of Dallas in the sum of $5,000 for the faithful performance by John C. Underwood of his contract of September 26, 1910, with the city of Dallas for the laying of the White Rock pipe line, and alleged that in the application the said Underwood agreed to pay it all costs, damages, charges, and expenses resulting from any act of negligence on his part which would result in the sureties on the bond being made liable; that on May 12, 1911, the said John C. Underwood advised the said M. Murphy, general agent of the Fidelity & Deposit Company of Maryland, in writing, that he was unable to comply with said pipe line contract, and requested them to do so, and in same assigned and set over all his rights and interest in said contract and all moneys then held in reserve by the city of Dallas on said contract, amounting to about $5,700, and authorized them to collect the same, subject, however, to orders heretofore given by Underwood to the Guaranty State Bank & Trust Company and the Crane Company; that Underwood obtained money from the Guaranty State Bank & Trust Company to do this work; that M. Murphy became surety upon said note, and also surety upon his bond to the city of Dallas, and that he executed the assignment above mentioned primarily and wholly for securing intervener Murphy against any loss he might sustain by reason of his suretyship upon said note; that said Underwood failed to build said pipe line; and that the sureties did so at a cost of $559.64.

"The First National Bank of Galveston, an intervener, and defendant in said cause, filed its first amended original intervention and answer on January 28, 1912. It alleged the date of the contract between the city and Underwood for paving Commerce street, viz., the 8th day of July, 1910, and that Underwood performed his contract, except as to a small portion thereof, which was performed by the city. That the said Underwood, being without means to carry out said contract, requested the bank to furnish him the money therefor, and in consideration of the bank's agreeing so to do, and the further consideration on the part of Underwood to secure an indebtedness then owing to the bank, Underwood on the 7th day of September, 1910, executed and delivered to the bank an assignment, which is as follows: 'Dallas, Texas, Sept. 7, 1910. For a valuable consideration to me in hand paid, I hereby assign to the First National Bank of Galveston, Texas, all the revenues accruing to me from the said city of Dallas by virtue of a certain contract with them for the paving of Commerce street. [Signed] Jno. C. Underwood.' That on the 15th day of September, 1910, intervener notified the city of Dallas of this assignment, and that on the 22d day of October, 1910, the said Underwood ratified said assignment by a certain other instrument of writing of that date. That on the 23d day of October, 1910, the city of Dallas was again notified of said assignment and also the instrument of date the 22d day of October, 1910. That on the 10th day of May, 1911, intervener also notified the city of Dallas that Underwood was then indebted to intervener in the sum of $6,500. That at the time of the filing of the intervention there was a balance due the intervener from Underwood

of the indebtedness secured by said assignment, and evidenced by notes and open account as follows: One note for $1,600, one note for $2,500, one note for $1,200, and balance by overdraft of $180.

"The intervener prayed judgment upon its said notes and open account, and also as follows: 'That this honorable court will adjudge and decree that the intervener has and had assignments and transfers to it of date the said 7th day of September, 1910, and the 22d day of October, 1910, and of the 10th day of May, 1911, of all the aforesaid sums of money which accrued to the said John C. Underwood, and payable to him, under the said contract for the paving of Commerce street, and which has been paid into court, by the said city of Dallas, and amounting to the said sum of $8,212.58. That intervener has a prior valid and subsisting lien on said sum of $8,212.58, as of dates the 7th day of September, 1910, and October 22, 1910, and May 10, 1911, to secure its aforesaid indebtedness and interest and attorney's fees, and costs of this intervention, and that said lien be duly foreclosed as against all parties to this suit, including the said plaintiff and all defendants and all interveners, and other parties herein, and that this court order and decree that the said sum of $8,-212.58, or so much thereof as may be necessary to pay said indebtedness of intervener and interest and attorney's fees and costs of this intervention, be paid to this intervener. That the said assignments and the said liens of the said intervener may be adjudged and decreed as a first and prior lien to any and all other alleged assignments and claims and liens to said sum of $8,212.58, being the said moneys now in the hands of the said city of Dallas, defendant herein, and by it paid into court.'

"The appellants in this cause filed interventions and answers alleging that they had furnished material and labor in and about the execution of said contracts by the said Underwood, and had filed their claims with the city of Dallas.

"The appellants, the Gulfport Creosoting Company, the Texas Bitulithic Company, the Dallas Paving Company, the Southwestern States Portland Cement Company, E. L. Haralson, and the Phelan Coal Company, among other matters sought by their pleas to impeach the consideration made by Underwood to the First National Bank of Galveston and to M. Murphy and the said fidelity company; to these pleas the said named appellees demurred, because the pleas were not duly verified by affidavits as required by the statutes of Texas; these demurrers were sustained and the pleas were not otherwise amended, but remained as they were, notwithstanding the judgment of the court sustained the demurrers thereto; there are no assignments of error to this ruling.

"On the 3d day of February, 1912, final judgment was entered in the cause:

"(1) In favor of the Guaranty Bank & Trust Company, as plaintiff, against Underwood, as principal, and M. Murphy, as surety, for $5,401.00 and interest.

"(2) In favor of the said Guaranty State Bank & Trust Company against the city of Dallas, defendant, for the said amount of $5,401 and interest and costs, to be paid by said city out of the fund of $5,147.90 on the pipe line contract, and balance out of the Commerce street fund; the right of payment of its judgment out of the Commerce street fund was subject to the payment of the judgment in favor of the intervener the First National Bank of Galveston.

"(3) The First National Bank of Galveston recovered judgment against Underwood for $6,349.13, with interest. It was ordered that said judgment be paid by the city of Dallas out of the funds in its hands belonging to the Commerce street fund, amounting to $8,212.58, and it was adjudged that said bank had a prior and paramount lien on said fund of $8,212.58 in so far as the said amount was necessary to pay off its said judgment.

"It was adjudged also that in event the said appellee Murphy should be compelled to pay the judgment against him in favor of the Guaranty State Bank & Trust Company, or any part thereof, that the judgment in favor of the Guaranty State Bank & Trust Company should not be discharged by such payment, but the judgment should remain in force for the use of the said Murphy and should be considered as assigned to him, both against Underwood and against the city of Dallas. Judgment was also rendered for $559.64 against the city in favor of the said Fidelity & Deposit Company and M. Murphy, being the amount of costs incurred by them for completing the said pipe line contract. Judgments were rendered in favor of the appellants against Underwood for their several claims, and that those of said appellants who had furnished materials for the Commerce street paving contract should have judgment for any balance left of said fund remaining after the payment of the judgments in favor of the First National Bank of Galveston and the Guaranty State Bank & Trust Company; and those who furnished material for the pipe line should have judgment against the city of Dallas for the balance remaining of said fund after payment of the said judgments in favor of the Fidelity & Deposit Company and M. Murphy and the guaranty company, the amount of said balance after payment of the above judgments to be prorated among the interveners in proportion to the amount of their respective claims, except that the claim of the Southwestern States Portland Cement Company should share in said prorating on the basis of $1,013.02, and the Jones Lumber Company should share in said prorating on the basis of $497.22. By said judgment it was also provided as follows: 'It is express-

ly adjudged that the limit of the liability of the defendant, city of Dallas, upon the judgments herein rendered against it is, and shall be, the amounts herein adjudged to be in its hands in the respective funds, without interest or costs.'"

## Conclusions of Facts.

John C. Underwood on July 8, 1910, contracted with the city of Dallas to pave Commerce street, and also on September 26, 1910, contracted with the said city to construct a pipe line from the city to White Rock Reservoir; said contracts were entered into with reference to the charter and ordinances of the city of Dallas, which were expressly referred to in said contracts. The contracts also provided that Underwood was to be paid as the work progressed upon estimates furnished, but the city had the right to reserve 15 per cent. from each and every estimate so made until final completion and acceptance. Underwood failed to complete said undertakings, and the same was completed by his sureties, M. Murphy and the Fidelity & Deposit Company of Maryland, at a cost of $559.64, which amount was still due them. Underwood, on January 9, 1911, being indebted to the Guaranty State Bank & Trust Company of Dallas county, by promissory note assigned and transferred to said bank "all such sums as the said city may hereafter hold in reserve under and by virtue of the said contracts," and the bank was authorized to collect, etc. Of this assignment the city was notified and agreed to pay said sums direct to the bank. The assignment to the bank was to cover all amounts due by Underwood, which amounted to $4,500, before Underwood abandoned the work.

On September 7, 1910, Underwood made to the First National Bank of Galveston the following assignment: "Dallas, Texas, September 7, 1910. For a valuable consideration to me in hand paid, I hereby assign to the First National Bank of Galveston, Texas, all of the revenues, accruing to me from the city of Dallas, by virtue of a certain contract with them for the paving of Commerce street. [Signed] John C. Underwood." Underwood notified the city of this assignment, but it was never accepted by the city.

On October 22, 1910, Underwood executed to the First National Bank of Galveston a power of attorney to collect the sum of money due him by the city for paving Commerce street. On May 10, 1911, the last-named bank gave notice to the city that Underwood was due it $6,500 to pay for work and material used in paving Commerce street, etc. Underwood was not able alone to financially comply with his contract and made arrangements with said bank to furnish the money for that purpose, and to secure it made the assignment to them. The other appellants herein were materialmen or laborers and furnished material or performed labor of which the city had been notified; the notices ranging from April 4 to May 18, 1911.

## Conclusions of Law.

[1] It is well settled by the decisions of this state that materialmen and laborers can fix no lien upon public works for money due them for material furnished or labor performed in the construction of such works. Bank v. Coleman, 151 S. W. 1123, and authorities cited therein.

[2] The appellants, therefore, do not claim any right to fix a lien on the works constructed for the city of Dallas, but they claim for the material furnished and labor performed in the construction of said works, for which the contractor Underwood is still indebted to them, that they have a superior claim on the money still due by the city to Underwood on said contracts. This claim is by virtue of article 14, § 21, of the city charter, which section reads: "No lien of any kind can ever exist against the public school buildings, public halls, parks, or public works of the city of Dallas. All subcontractors, materialmen, mechanics and laborers upon any public works of the city of Dallas are hereby required to notify the city of all claims they may have on account of such work against the city, and when such notice has been given the city shall retain an amount from any funds due the contractors sufficient to satisfy all claims: Provided, that such notice may be given at any time after such indebtedness becomes due and before final settlement: And provided, further, that no contractor or subcontractor shall issue any time checks on or on account of any public work of said city." This section of the charter merely prescribes a mode by which the city can pay materialmen and laborers such sums as may be due them for material furnished and labor performed out of funds held by it under the contract and due the contractor; but we do not understand that said section gives any superior claim or right to said fund, except as against the contractor. It does not change the rule where the fund has been assigned to third parties before the materialmen and laborers had notified the city, as was the case here.

The contracts herein were made by the city in its own behalf and not for the benefit of materialmen and laborers. No right of action is given them to enforce its performance, and they stand in relation thereto as any other party. In the case of Bank v. Coleman, supra, in which a writ of error was denied by the Supreme Court, where materialmen and laborers made a similar claim of a superior right to a fund held by the county of Grayson, which was due a contractor, from a public work, we held that: "They were not parties to the contract between McNerney and the county. Under it they had no right of action to compel its performance to protect their interests for labor performed and material furnished. The county by the terms

of the contract was under no obligations to them."

[3] However we may view the hardships on the laborers and materialmen in not receiving their dues for their labor performed and material furnished, we must not overlook that appellees advanced money which enabled Underwood to progress with the work as far as he did, and which was completed by the efforts of the Fidelity & Deposit Company of Maryland and M. Murphy. The appellees were vigilant and secured themselves by having Underwood to assign to them such funds as might be retained by the city by virtue of the contract. This was a right accorded them by law, and having complied with the law their rights are paramount to the equities of appellants. Harris Co. v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467; Lumber Co. v. Smith, 151 S. W. 605; Bank v. Coleman, supra; Beilharz v. Illingworth, 132 S. W. 106.

The assignments of the fund in the hands of the city to appellees by Underwood being legal and made long prior to any rights of appellants had accrued, the amounts due appellees were entitled to be first paid out of said fund and the trial court did not err in so holding.

The judgment is affirmed.

### Additional Findings of Fact.

At the request of appellants we find the following facts: That the defendant John C. Underwood was justly indebted to appellants in the respective amounts, on the dates shown by the record, for material furnished or by labor performed by them, which material was used or labor performed either in paving Commerce street or laying the White Rock pipe line, which were public works of the city of Dallas, under the said Underwood's contracts with the city of Dallas, dated respectively July 8, 1910, and September 26, 1910. That said amounts were unpaid, and the fact that each of appellants notified in writing the city of Dallas of their said claims that the said notices in writing were given after the maturity of the respective claims, and that each of appellants complied with section 21, art. 14, of the charter of the city of Dallas, in the filing of their said claims with said city. That the defendant John C. Underwood was justly indebted to Gulfport Creosoting Company in the sum of $14,747.78 on the date of the trial, January 25, 1912, for material furnished by said Gulfport Creosoting Company to the said John C. Underwood, and by him used in paving Commerce street, a public work of the city of Dallas, under his (Underwood's) contract with the city of Dallas, dated July 8, 1910, and which amount is unpaid. That said indebtedness became due February 9, 1911. That said Gulfport Creosoting Company notified in writing the said city of Dallas of said claim on the 9th day of March, 1911. That the wooden blocks used by John C. Underwood in paving Commerce street, under his contract with the city of Dallas, dated July 8, 1910, was sold to him by the Gulfport Creosoting Company under a sale made in June, prior to the opening of the bids by the city of Dallas, and that John C. Underwood based his bid for said work upon the prices for the wooden blocks made him by the appellant Gulfport Creosoting Company and when the contract was awarded him the sale was concluded. That the first shipment was made by appellant to Underwood September 26, 1910, and the last December 9, 1910. No amount was to be payable later than 60 days. That appellant Gulfport Creosoting Company had no notice or knowledge of any assignment by Underwood to the First National Bank of Galveston until May 10, 1911, or to the Guaranty State Bank & Trust Company until April 5, 1911.